Frank W. Cauley et al., Appellants, v. Northern Trust
Company et al., Appellees.

Gen. No. 40,528.

Heard in the third division of this court for the first district at the December term, 1938. Opinion filed June 24, 1942.

McGilvray, Vaughan, Tilley & Humphrey, of Chicago, for appellants; Franklin E. Vaughan, of Chicago, of counsel.

Pam, Hurd & Reichmann, of Chicago, for certain appellees; Arthur M. Cox, of Chicago, of counsel.

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, for certain other appellees; Anan Raymond and Samuel W. Block, both of Chicago, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

On April 26, 1937, Frank W. Cauley, Rosalie Hill Cauley, James B. Cauley and 1550 Hinman Avenue Building Corporation filed a complaint at law in the superior court of Cook county against the Northern Trust Company, a corporation, seeking a judgment for $25,000 and the income accrued thereon from

May 8, 1934. Plaintiffs set forth portions of articles 6 and 7 of a 99-year lease on real estate in the city of Evanston, and allege that the Cauleys were the owners and holders of all of the capital stock of the 1550 Hinman Avenue Building Corporation, an Illinois corporation, and as such were interested in the subject matter and in the right to the relief sought and therefore joined as plaintiffs with the building corporation. On June 3, 1937, the Northern Trust Company filed its motion to dismiss, setting forth nine reasons. On December 30, 1937, plaintiffs were given leave to amend by (1) changing the complaint from law to equity; (2) discontinuing the building corporation as a plaintiff and naming it as a defendant; (3) joining as additional plaintiffs the members of the firm of McGilvray, Eames, Vaughan & Tilley; and (4) naming as additional defendants Pure Oil Company, a corporation, the North Side Cleaners & Dyers Company, a corporation, Loch, Inc., a corporation, Julius Erlenbach, doing business as Melanie Beauty Salon, Ruth Tooze, doing business as the Book Box, Northwestern Realty & Building Company, Inc., a corporation, and Nelson Ewings. The amended complaint was filed on December 30, 1937, and recited that plaintiffs sued also for the benefit of any other creditors of the building corporation who might desire to become parties plaintiff. There was no allegation that the creditors had recovered a judgment against the corporation. Plaintiffs sought to recover from the Northern Trust Company, depositary under the 99-year lease, the sum of $25,000 and the income thereon, and to recover from the additional defendants, who were alleged to be in possession of various parts of the premises since prior to June 8, 1937, the fair rental value of the various portions of the premises so occupied. It was alleged that the corporation had been dissolved more than two years prior to the commencement of the action, and plaintiffs asked that a

receiver be appointed and that the various sums sought to be collected be paid to the receiver for the benefit of the creditors of the corporation and its stockholders. On May 11, 1938, separate motions to dismiss, one by the Northern Trust Company and the other by the occupants of the premises, were sustained. Pursuant to leave of court, plaintiffs filed a second amended complaint alleging that the "plaintiffs hereby dismiss the cause as to 1550 Hinman Avenue Building Corporation," although no order of dismissal appears to have been entered. The lessors, Libbie B. Hill, Jean Patterson Hill and Matson B. Hill, were not made parties to the original complaint or the amended complaint. Jean Patterson Hill and Matson B. Hill, who had also acquired the rights of Libbie B. Hill, were named as parties defendant to the second amended complaint. No relief was prayed against them. On July 12, 1938, the motion of the Northern Trust Company to dismiss the second amended complaint was sustained, and on July 14, 1938, a similar motion by the occupants, was sustained. Plaintiffs elected to stand upon the second amended complaint and it was dismissed. Jean Patterson Hill and Matson B. Hill, lessors, died after the filing of the second amended complaint. On the verified motion of plaintiffs, the court, on September 16, 1938, dismissed the cause as to them. Notice of appeal was filed by the plaintiffs on September 19, 1938.

The second amended complaint, which for convenience we will hereinafter call the complaint, alleges that on May 12, 1926, Libbie B. Hill, a widow, Jean Patterson Hill, a spinster, and Matson B. Hill, divorced and not remarried, as lessors, executed a certain indenture of lease with Morris E. Feiwell, as lessee, wherein they demised for a period of 99 years commencing with June 1, 1926, and ending May 31, 2025, certain premises in Evanston, and that the lease was duly executed, acknowledged and recorded; that

it was provided in the lease among other things, as follows:

## "ARTICLE SIXTH

### Construction of New Building

"Section 1. Lessee covenants, as security for the payment of the rent on or before June 1, 1931, to erect upon said premises a first class modern building, suitable for the purposes specified in said Lease, not less than two stories in height, to cost not less than $125,000.00; said building to be ready for occupancy on or before June 1, 1931 and Lessee to pay all costs and expenses in any way connected with its construction and to keep demised premises and building free from all mechanics' and similar liens and to deliver to Lessors and The Northern Trust Company an Architect's Certificate certifying that the building has been built pursuant to the provisions of Lease and paid for in full.

"Sec. 4. Lessee agrees, upon delivery of this Lease to deposit with The Northern Trust Company, as Trustee for Securities cash and/or securities of market value of not less than $50,000.00 to be held by said Trustee for use in the construction of such new building and/or for other purposes, as hereinafter provided.

"Sec. 5. If Lessee desires to postpone the erection of new building for a period of five (5) years beyond June 1, 1931, he may do so by depositing with said Trustee, on or prior to June 1, 1931, additional cash and/or securities of a market value of $25,000.00, which additional cash 'and/or' securities shall be held by Trustee under the same conditions.

"Sec. 8. Lessee may wreck the building now on premises any time after making the deposit of cash and/or securities, providing that at the time of the removal of said building Lessee shall not be in default under this lease; in the event the present building is wrecked, the materials shall belong to Lessee.

## "Article Seventh

### Deposit of Securities

"Lessee covenants before tearing down the present building or any building at any time on said premises and before commencing any work on a new building, to deposit with The Northern Trust Company, as Trustee, cash and/or securities approved by said Trustee, of an additional market value equal to the estimated cost of the building to be erected, provided that in making such deposit Lessee shall be given credit for the cash and/or securities theretofore deposited with the Trustee; provided, further, that if Lessee shall procure from any reputable bank, trust company or loan house having a paid up capital of not less than $750,000.00, a valid commitment to make a loan sufficient to erect said new building and shall agree to accept said loan and shall execute the mortgage or trust deed and notes or bonds to evidence the same, then the amount of securities to be deposited shall be decreased by the amount of the net proceeds of said loan; the cash and/or securities so deposited with the Trustee shall be held, applied and disposed of by said Trustee as follows:

"(a)    Until default by the Lessee under said Lease, the net income received by the Trustee, after deducting costs and charges, shall be paid over to Lessee; upon the completion of a new building in accordance with Article Sixth and the payment by Lessee of all expenses incurred in the erection thereof, so that said premises and building shall be free and clear of all liens and if Lessee is not then in default, the cash and/or securities then on deposit shall be paid over to Lessee upon payment of the Trustee's costs.

"(b)    When Lessee shall have commenced to construct a new building under Article Sixth and shall have proceeded in such construction to a point where the cash and/or securities in the possession of the

Trustee shall be sufficient to pay for the completion of said building, Lessee shall be entitled to have them applied by Trustee, upon Architect's Certificates, to the cost of completing said building; Trustee shall not be required to examine into the competency of any architect or to be responsible for the proper application of said money.

"(c) If Lessee shall make default in any of the payments required to be made to the Lessors under the terms of said Lease while said cash and/or securities are on deposit with Trustee, Lessors shall, at their option, have the right to receive from Trustee an amount or amounts equal to the payments in regard to which Lessee is in default and in each such case Lessee covenants within ten (10) days after written notice, to deposit with Trustee, additional cash and/or securities approved by it of market value to make good any such depletion.

"(d) In the event this Lease is terminated by reason of any default of Lessee, Lessee covenants that he will indemnify Lessors against all loss suffered by them during each and every semi-annual period within the original term, in case the net rental or proceeds received by the Lessors from the use of said premises, shall be less than the net rent which would have been received under this Lease and Lessee covenants that if this Lease be terminated while any of said fund remains on deposit with the Trustee, the Trustee, at Lessors' election, shall retain possession of all of said funds, together with income, as additional assurance for the performance of the covenants of Lessee in this paragraph and after such termination, Lessee shall not be entitled to any income from said fund but said fund and income shall be retained by Trustee until any period when Lessors shall have suffered any loss, as above, and Lessors shall, from time to time, as loss is suffered, be entitled, at their election, to have applied such amount of income as shall be necessary

to make good such loss; or at Lessors' election, said Trustee may apply said fund to the reimbursement of Lessors for any such loss and said Trustee shall continue to hold such fund and income and to apply same from time to time during the entire term of this Lease, returning any overplus at the end of said term, after payment of all losses of Lessors, to Lessee; or Lessors, at their option, as a separate and distinct remedy, in the event of the termination of this Lease for default of Lessee, shall have the right, at the time of such termination, to receive and retain all such funds on deposit with said Trustee, together with income, and in the event of such election by Lessors, they shall have the right to receive same as their property by way of liquidated damages, free and clear of all claims of Lessee.

"(e)   If Lessee fails to erect and pay for a building under Article Sixth, Lessors have the right to forthwith demand and receive all cash and securities then on deposit with Trustee and to retain the same as agreed liquidated damages by reason of such default by Lessee.

"(f)   Lessee has the right, while not in default, to withdraw securities on deposit with Trustee, upon substituting other securities of equal value.

"(g)   Lessee agrees to make good, by deposit of additional securities, any depreciation in value of securities on deposit.

"(h)   Trustee, upon ten (10) days written notice to Lessee, has authority to sell any and all securities on deposit provided it is necessary to secure money to carry out the provisions of this Lease; in ascertaining the amount of money required to pay for any buildings or repairing same, Trustee may rely upon the sworn statement of the architect in charge.

"(i)   All charges of The Northern Trust Company or its successor, as Trustee, shall be paid by the Lessee.

"Article Twelfth:

## Re-entry upon Default

"Sec. 1.  Provides that if Lessee makes default in the payment of rent and such default continues for thirty (30) days after notice in writing to Lessee, or if Lessee makes default in any other covenants and such default continues for sixty (60) days after notice in writing, it shall be lawful for Lessors, at their election, to declare said term ended and to re-enter said premises and to expel Lessee and every other person in the same and to re-possess and enjoy said premises each in their first estate, without working a forfeiture of the rents to be paid and covenants to be performed by the Lessee during the full term of this Lease; in the event of such termination, Lessee covenants to indemnify Lessors from any loss arising from such termination and to pay to said Lessors, after such termination and at the end of each half year, the difference between the net income actually received by Lessors from said premises and the rent agreed to be paid under this Lease, together with expense of re-letting and repairing the improvements on said premises.

"Sec. 2.  Lessee waives any demand for possession of said premises in the event of the forfeiture of said lease and agrees that written notice of default herein provided for may be given in any of the ways provided in Article Twenty-Third and giving such notice in any of said ways shall constitute sufficient notice for the purpose of declaring a forfeiture under the terms hereof where a notice of default is required to be given by said Lessors.

"Sec. 3.  It is covenanted that if the Leasehold estate shall be conveyed by mortgage or Trust Deed, and if the Lessors shall be notified of such fact and of the name and address of the mortgagee or trustee,

as long as such instruments are in force, notice of any default shall also be given to the mortgagee or Trustee and such mortgagee or Trustee may, within such time, remedy and default on the part of Lessee and otherwise comply with such notice.''

"ARTICLE TWENTY-THIRD:

Manner of Serving Notice

"Notices required under the terms of this Lease shall be sufficient if served as follows:

(1) By delivering copy of such declaration, demand or notice to the Lessors or Lessee, or

(2) By sending a copy of such declaration, demand or notice by registered mail to Lessors or Lessee at such address as the one party may have theretofore furnished to the other party in writing for such purpose; or if no such address shall have been furnished then to the party at the last known address.

"All notices to or demands upon the Lessors or Lessee, are hereby required to be in writing and in any case the declaration, demand or notice may be signed, made, given or served in person or by agent, Attorney or servant.

"If there is more than one Lessor or more than one Lessee, any declaration or notice served upon one and addressed to all shall be sufficient; in the event of the existence of a mortgage or Trust Deed and notification thereof to the Lessors, the mortgagee or Trustee may be similarly served, either by delivery or registered mail; the provisions of this Article, as to service of notice, shall also apply to service of notice, demands and declarations by The Northern Trust Company.

"In each and every case, such service, in any of the modes provided in this Article, shall be sufficient and effectual for all purposes and no other demand or notice or method or manner of giving or serving the same shall be required.''

The complaint recited that "for further details of the various provisions of said lease, plaintiffs refer to the record thereof and to one of the duly executed triplicate originals thereof ready to be produced in court upon the hearing hereof." It alleges that at the time of the execution of the lease, the lessee, Morris E. Feiwell, deposited with the Northern Trust Company the sum of $50,000 in cash, cash and securities or securities of the fair market value of $50,000, to be held under the terms of the lease; that on November 28, 1928, the lessee, by instrument in writing, assigned to plaintiff Frank W. Cauley, all interest of the lessee under the lease, together with all interest in the cash or securities deposited with the trust company, in consideration of the payment to him by the assignee of $203,729.46; that the assignment was duly acknowledged and recorded; that on February 11, 1929, plaintiff, Frank W. Cauley, assigned to the 1550 Hinman Avenue Building Corporation, a corporation created for the purpose of taking title thereto, all of lessee's interest in said lease; that after November 28, 1928, Frank W. Cauley, and thereafter the said building corporation entered into certain contracts with various persons providing for the removal of the old buildings located on the premises, for the construction of a new building and entered into a valid commitment with Peabody, Houghteling & Company, a loan house having a paid-up and unimpaired capital surplus in excess of $750,000, for a building loan in the amount of $1,125,000, all in accordance with the terms of the lease; that after the removal of said old buildings the building corporation caused said premises to be excavated and foundations for the proposed new building to be installed at an expense to the building corporation of $81,681.17; that after the completion of said excavations and foundations, said Peabody, Houghteling & Company became insolvent and incapable of carrying out the loan contract, and that by reason of general conditions throughout the

United States, including Cook county, it was impossible to procure funds to complete the building immediately and the completion thereof was thereby delayed; that prior to May 1934, Libbie B. Hill died, and between May 1 and May 8, 1934, Matson B. Hill and Jean Patterson Hill, claiming to be the owners in fee simple of the premises described, and of all of the lessors' interest in the lease, while such lease was in full force and effect and not in any wise terminated or canceled, reentered the demised premises and put out all occupants and repossessed the premises and thereby wrongfully and improperly evicted the 1550 Hinman Avenue Building Corporation therefrom, and by said wrongful acts seized and converted to their own use the improvements, consisting of excavations and foundations installed at the cost and fair market value, at the time of such eviction, of $81,681.17, and that the said Matson B. Hill and Jean Patterson Hill have, since then wrongfully converted to their own use said excavations and foundations and used the same in the construction of other buildings on the premises; that on May 8, 1934, there was in the possession of the Northern Trust Company, cash or cash and securities, or securities of the market value of $25,000, the cash and securities originally deposited having been, prior thereto, diminished by $25,000 paid to said lessors on account of ground rent under the lease; that by the wrongful acts of Matson B. Hill and Jean Patterson Hill performed between May 1 and May 8, 1934, the lessors violated the covenants by them required to be performed as to quiet possession and peaceful enjoyment of the premises, and wrongfully caused a loss to the 1550 Hinman Avenue Building Corporation, or to the plaintiffs, the Cauleys, of the amount of their original investment, to-wit, $203,729.46, and a further loss by the building corporation in the improvements of the premises, in the amount of $81,681.17, and that by said breach of said covenant, Matson B. Hill and

Jean Patterson Hill became in default under the terms of the lease and thereby waived, released and forfeited all right, title and claim to said cash or cash and securities in the amount of $25,000 on deposit with the Northern Trust Company; that on or about June 16, 1932, a decree was entered in the superior court of Cook county, in the case of *People ex rel. v. 1550 Hinman Avenue Building Corporation,* No. 57278, wherein it was decreed that the building corporation be dissolved; that by the indenture of lease and the assignments thereof, an estate in lands and realty became vested in the building corporation, being a leasehold estate for 99 years expiring May 31, 2025; that at the time of the entry of the decree of dissolution, the leasehold estate was vested in the building corporation, and by virtue thereof the building corporation was entitled to a large amount of uncollected assets; that there was due the building corporation large sums of money from various individuals and corporations; that upon said dissolution the leasehold estate and all assets of the corporation became vested in plaintiffs, the Cauleys, as owners of all of the capital stock of the corporation, and that the plaintiffs are now the owners of all of the capital stock and the owners of, and entitled to, the leasehold estate and all rights and appurtenances; that since the entry of the decree of dissolution additional large sums of money have become due to plaintiffs as such stockholders, and further sums will continue to become due to them by reason of their ownership and title to the leasehold estate; that at the time of the entry of said decree of dissolution, the building corporation was indebted in large amounts to certain of the plaintiffs, as hereinafter set forth, and to numerous other individuals and corporations whose names are unknown to plaintiff; that upon the vesting of the title to the leasehold estate in the stockholders of the building corporation, said stockholders acquired the same, burdened with all

claims then existing and thereafter arising against the corporation as a previous owner of said leasehold estate, and that the stockholders now hold title to the estate primarily for the benefit of the creditors of said building corporation, and secondarily for themselves as such stockholders; that if by reason of the decree of dissolution the building corporation is precluded from bringing suit to enforce the collection of its assets, this court has the right and duty to appoint a receiver to collect all sums so due and hereafter falling due either to the corporation or stockholders, by virtue of their title to the leasehold estate, and that said sums should be collected and conserved as a trust fund for said creditors and stockholders; that the building corporation, by reason of its title, prior to its dissolution, to said leasehold estate, became and is indebted to the plaintiff, Frank W. Cauley, on its promissory note dated June 30, 1931, in the amount of $30,000, due on or before one year after date, with interest at 5 per cent; that said corporation, by reason of its ownership of said leasehold estate, is indebted to the plaintiffs, Franklin E. Vaughan, Earle F. Tilley and A. G. Humphrey, copartners, doing business as McGilvray, Vaughan, Tilley & Humphrey, upon its promissory note dated June 30, 1931, in the amount of $1,825, due on or before one year with interest at 5 per cent; and also upon open account for cash advanced and professional services rendered to the corporation in the conservation and protection of said leasehold estate, in the sum of $4,218.10; that plaintiffs, the Cauleys, are the owners of all the stock of said building corporation and hold the same and the leasehold estate subject to the claims and equitable liens of all creditors of the corporation, and are entitled to share in the distribution of its assets, which may be collected, after the payment of all claims to such creditors; that on March 10, 1937, formal demand was made on the Northern Trust Company for the payment to plain-

tiffs of the cash, or cash and securities, in the amount
of $25,000 on deposit under the terms of the lease on
May 8, 1934, that said defendant has refused and neg-
lected to comply with said demand and to pay over to
the building corporation, or its agents, attorneys or
stockholders, the said cash and securities, and that
there is due from the Northern Trust Company, in
addition thereto, all income upon said cash and securi-
ties from May 8, 1934; that the paragraphs quoted
from the lease are the only paragraphs of the lease
having to do with or referring to the deposit of se-
curities, reentry upon default and the manner of
serving notice; that at the time of the wrongful evic-
tion, certain amounts of rent were due from lessee to
lessors, and certain taxes were in default; that under
the provisions of article 12 of the lease, the lease re-
mained in full force, irrespective of any defaults on
the part of the lessee until lessors should exercise
their election to declare said term ended and that the
lessors did not, prior to said wrongful eviction, in
any manner evidence their election to terminate the
said term in accordance with the provisions of the
lease; that since the wrongful eviction of the building
corporation, various other persons and corporations
have from time to time been in possession of the dis-
mised premises, or parts thereof; that at the present
time Pure Oil Products Company, the North Side
Cleaners & Dyers Company, Loch, Inc., Julius Erlen-
bach, doing business as Melanie Beauty Salon, Ruth
Tooze, doing business as the Book Box, Northwestern
Realty & Building Company, a corporation, and Nelson
Ewings are in possession of various parts of the prem-
ises; that they have been in possession since prior to
June 8, 1937, with the exception of Nelson Ewings;
that on or about June 8, 1937, formal demand was
made on all of the said persons and corporations, with
the exception of Nelson Ewings, that they pay to the
building corporation or its stockholders, after the re-

ceipt of said notice, a reasonable rental for the premises occupied by each of them; that Nelson Ewings came into possession of a part of the premises after June 8, 1937, at a time when all of the matters above set forth were of record.

Separate briefs have been filed on behalf of the Northern Trust Company and on behalf of the occupants of the premises. In passing on the points raised by the motions to dismiss, we recognize that we are required to assume the truth of the facts well pleaded. The motions do not, however, admit conclusions of law or conclusions of fact unsupported by allegations of specific fact upon which such conclusions rest. We also have in mind the rule that a pleading is taken most strongly against the pleader. Defendants maintain that the sections quoted from the 99-year lease and the allegations as to wrongful eviction, fail to show any right in the lessee or the plaintiffs to the fund originally deposited with the Northern Trust Company; that plaintiffs failed to show any claim against the Northern Trust Company for the fund deposited with it as trustee; that the complaint fails to allege facts showing the 99-year lease to be in full force and effect, and therefore, fails to disclose any right of recovery. Plaintiffs insist that the sections quoted from the lease and the allegations of wrongful eviction were sufficient to disclose a right in the lessee and, therefore, in the plaintiffs, to recover the fund on deposit with the Northern Trust Company, and that the lease, being in full force and effect, the complaint discloses a clear right of recovery against the persons and corporations in possession of the premises for the use and occupation thereof. The complaint admits that at the time of the alleged eviction of the lessee, defaults existed as to the failure to erect a building, in the payment of rent and in the payment of taxes. Plaintiffs concede that under these circumstances the

lease gave to the lessor the right to terminate the lease. Plaintiffs contend, however, that the lessors failed to exercise such right, but chose instead to forcibly eject the lessee. Plaintiffs argue that considering the general conditions which existed from 1929 until the time of the alleged eviction in May 1934, it is quite possible that lessors felt it inadvisable to terminate the lease, preferring to keep it in full force. They urge that under these circumstances, lessors had no right to forcibly eject the lessee. It will be noted that the eviction claimed by the plaintiffs in the instant action is not a constructive, but an actual eviction. The complaint is silent as to how the corporations and individuals from whom a "fair rental" is asked, came into possession. In their brief plaintiffs state that the complaint contains no allegation or inference that these parties are lessees of the Hills. Despite the fact that there is no such allegation, it is plain to us that these tenants are in possession by authority of someone claiming the right to give them possession other than the plaintiffs, Feiwell, or the Hinman Avenue Building Corporation. Section 1, of ch. 80, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 72.01] (the Landlord and Tenant Act) provides "that the owner of lands, his executors or administrators, may sue for and recover rent therefor, or a fair and reasonable satisfaction for the use and occupation thereof, by a civil action, in any court of competent jurisdiction in any of the following cases: . . . Second. When lands are held and occupied by any person without any special agreement for rent. . . ." The effect of this clause is to permit the owner to waive the tort and sue a trespasser in assumpsit without showing the existence of an express or implied contract. Plaintiffs, however, must be the owner entitled to possession. When one party occupies the premises of another without any agreement for the payment of rent the law implies a

promise on the part of the occupant to pay the owner for the use and occupation thereof a reasonable rental value.

We agree with defendants that the complaint does not allege any facts showing any right on the part of plaintiffs to claim the fund which it is alleged was on deposit with the trust company on May 8, 1934, three years prior to the commencement of the suit. From the provisions of articles 6 and 7 of the lease, it appears that the lessee agreed that he would on or before June 1, 1931, construct a building on the demised premises, to cost not less than $125,000, and that in the event of his failure to complete and pay for the building within the time specified, the lessor should have the right to demand and receive the cash and securities on deposit with the trustee. It is admitted that at the time of the alleged eviction the lessee was in default for failure to erect a building, as well as in the payment of rent and taxes, and there are no facts alleged showing any waiver of this right; nor did plaintiffs allege that the lessors made any agreement extending the time within which the lessee could erect the building on the premises. Passing to the allegations as to the alleged wrongful eviction, it will be noted that the complaint states that the owners, "while said lease was in full force and effect and not in any wise terminated or cancelled, reentered the demised premises and put out all the occupants of the same and repossessed said premises and thereby wrongfully and improperly evicted said 1550 Hinman Avenue Building Corporation therefrom." By article 12 of the lease, in the event of default for nonpayment of rent for 30 days after notice to the lessee, or default in any other covenant for 60 days after notice to the lessee, it was agreed it was lawful for the lessors at their election to declare the term ended and to reenter the demised premises. By section 2 of the same article it was provided that "the lessee waives any demand

for possession of said premises in the event of forfeiture of said lease, and agrees that written notice of default herein provided for may be given in any of the ways provided in article 23rd, and the giving of such notice in any of said ways shall constitute sufficient notice for the purpose of declaring a forfeiture under the terms hereof where a notice of default is required to be given by said Lessors.'' The complaint is silent as to whether notice of default was served in accordance with the lease. It is not alleged that notice was not served. The only charge in the complaint is the failure of lessors to exercise their election. In their brief plaintiffs assume that the requisite notices of default had been served and that the 30 or 60-day period had elapsed. Plaintiffs, however, argue that it was necessary to serve two sets of written notices, first a notice of default, and after the 30 or 60-day period another notice ''to declare the said term ended.'' For this construction, plaintiffs rely upon article 23 of the lease, and urge that the term ''declaration'' appearing throughout this article can refer to nothing except the declaration ending the term of the lease, and that no declaration ending the term was served in accordance with article 23. They assert that the lessors utterly failed to end the term by a written declaration under article 23, but took the law into their own hands and forcibly ejected the lessees from the premises, and that they did this at a time when the lease was in full force and effect; that when the lessees were thus forcibly ejected, their obligation to pay rent thereafter or to erect a new building on the premises thereafter was terminated, and that thereafter there could be no forfeiture for nonpayment of rent. We are unable to agree with the contention of plaintiffs. Article 23 does not require the lessors, when they ''declare said term ended'' to do so by written declaration. We agree with defendants that the allegation of the complaint that ''the lease was in

full force and effect and not in any wise terminated or cancelled'' is a pure conclusion of the pleader. We also agree with the contention of defendants that the questions as to the construction of the lease, whether it requires the service of two notices in writing and whether it was terminated or is still in full force and effect, cannot be determined without having the lessors in court as defendants.

The complaint admits that the charter of the building corporation was dissolved by a decree of the superior court on June 16, 1932, more than a year after the lessee was required to complete and pay for the building. At the time the building corporation was dissolved, and for two years thereafter, the lessee had done nothing about constructing the building except to make an excavation on the demised premises and to construct some foundations. This was the status of the demised premises when, between May 1 and May 8, 1934, it is alleged the lessors reentered the premises. The property therefore remained with nothing but the excavation on the demised premises from 1928 (when it is alleged the plaintiffs entered into contracts for the construction of the building) until May 1934. It appears, therefore, that the premises were vacant at the time of the alleged wrongful eviction, and that the lessee corporation had been dissolved for nearly two years. Notwithstanding these circumstances, it is alleged that the lessors ''put out all occupants of the same and repossessed said premises, and thereby wrongfully and improperly evicted said 1550 Hinman Avenue Building Corporation therefrom.'' It is apparent that as there was nothing but an excavation on the premises, there could not have been any ''occupants'' on the same. Furthermore, it is apparent that the building corporation could not have been in possession of the premises, first, because it had been dissolved nearly two years before, and second, because the premises were vacant. These allegations contra-

dict one another. Plaintiffs then argue that "when lessees were thus forcibly ejected from the premises, their obligation to pay rent thereafter or to erect a new building on the premises thereafter was terminated by the act of the lessors." At this time the building corporation had been dissolved for almost two years. The references to its eviction and to its obligation are, therefore, fictitious. The corporation, as an assignee of the lease, was required to construct a building by June 1, 1931. After destroying the existing building it not only failed to construct the new building, but only dug an "excavation" and built foundations and then abandoned the premises from 1928 to 1934, a period of six years, during which it went out of existence as a corporation. As hereinbefore stated, plaintiffs rely on an actual eviction. In *Patterson v. Graham,* 40 Ill. App. 399, this court said: "An actual eviction is an actual expulsion of the tenant out of all or some part of the demised premises, a physical ouster or dispossession from the very thing granted, or some substantial part thereof." Defendant suggests that as the lessee corporation had been dead for nearly two years, it would take considerable power of imagination to conceive the wrongful eviction of the ghost of this corporation from "a hole in the ground," referred to in the complaint under the more dignified appellation of an excavation. We are of the opinion that the complaint fails to show any right in the plaintiffs to the fund deposited with the Northern Trust Company, or to require the remaining defendants to pay rent for the occupancy of the premises.

The parties present other points for our consideration, including the contention by plaintiffs, opposed by defendants, that the instant action was maintainable even though brought more than two years after the dissolution of the 1550 Hinman Avenue Building Corporation. The points discussed dispose of the case, and we will not extend the opinion by passing on the

remaining points. For the reasons stated, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

HEBEL and KILEY, JJ., concur.